UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEBORAH ANDERSON, et al.,

                              Plaintiffs,

                                                    DECISION AND ORDER

                                                    00-CV-6275L

                    v.

ROCHESTER-GENESEE REGIONAL
TRANSPORTATION AUTHORITY, et al.,

                              Defendants.
_____

## PROCEDURAL BACKGROUND

Plaintiffs brought this action under 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., alleging that defendants Rochester-Genesee Regional Transportation Authority and Lift Line, Inc. (collectively "the company") violated the ADA in a number of respects in connection with defendants' delivery of paratransit service, *i.e.*, transit service for disabled persons. On August 14, 2001, this Court issued a Decision and Order granting summary judgment in favor of plaintiffs on three of their four claims (plaintiffs did not move for summary judgment on their second claim for relief), and enjoining defendants "to take immediate steps to

comply with their obligations under the ADA and federal regulations implementing that Act ... ."

*Anderson v. Rochester-Genesee Regional Transp. Auth.*, 206 F.R.D. 56, 71 (W.D.N.Y. 2001).[1]

On April 26, 2002, the Court issued a second Decision and Order designed to implement its August 14, 2001 order. 205 F.Supp.2d 106 (W.D.N.Y. 2002). The April 26 order directed the company to take certain specific actions in order to comply with the ADA.

On July 23, 2003, the Court of Appeals for the Second Circuit issued a decision affirming this Court's grant of summary judgment on plaintiffs' first and third claims, alleging violations of 49 C.F.R. §§ 37.131(b) and (f) respectively, and reversing as to plaintiffs' fourth claim, which alleged a violation of 42 U.S.C. § 12143(e)(4).[2] The Court of Appeals also "remand[ed] for proceedings on the latter claim, [and] for any reframing of the injunction that may be justified by [the Second Circuit's] opinion or circumstances that have developed during the pendency of the appeal ... ." 337 F.3d 201, 217 (2d Cir. 2003).

On remand, I modified the injunction to provide, consistent with the Court of Appeals' decision, that "[t]he company must design, fund and implement a plan to meet 100% of the demand for next-day ride service," and that "[i]f a pattern of noncompliance develops, or if it appears that

---

[1]The pertinent facts of this case are set out in the Second Circuit's decision at 337 F.3d 201, and in this Court's decisions entered on August 14, 2001 (206 F.R.D. 56), and on April 26, 2002 (205 F.Supp.2d 106). Familiarity with those decisions, and with all prior proceedings in this case, is assumed.

[2]Section 37.131(b) provides that a public entity that is required to provide paratransit service must provide "next-day" service, *i.e.*, rides provided the day after a ride request is made. Section 37.131(f) prohibits such an entity from maintaining waiting lists for paratransit service. Section 12143(e)(4) makes it a violation for such an entity to fail to provide paratransit service in accordance with the plan that the entity submitted to the Secretary of Transportation pursuant to 42 U.S.C. § 12143(c)(7).

ride denials are attributable to the design of the company's paratransit system, the company must modify the plan, and implement whatever corrective changes are necessary to achieve the goal of reaching the 100% service level."  332 F.Supp.2d 540, 542 (W.D.N.Y.  2004).

Plaintiffs have now moved for an award of attorney's fees and costs in the amount of $545,883.52, pursuant to 42 U.S.C. §§ 1988 and 12205.  Defendants do not dispute that plaintiffs are "prevailing parties" in this case, and are therefore entitled to some fee award, but contend that the amount requested is excessive and should be reduced substantially.

**DISCUSSION**

**I. Attorney's Fees Under 42 U.S.C. §§ 1988 and 12205–General Principles**

Section 1988 of Title 42 provides that "[i]n any action or proceeding to enforce a provision of section[] ... 1983 ... of this title, ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs ... ."  Similarly, § 12205 provides that "[i]n any action ... commenced pursuant to this chapter, the court ..., in its discretion, may allow the prevailing party ... a reasonable attorney's fee, including litigation expenses, and costs ... ."  Thus, a fee request under either statute is analyzed under the same standards.  *See Brinn v. Tidewater Transp. Dist. Comm'n*, 242 F.3d 227, 233 n. 3 (4th Cir. 2001); *Bercovitch v. Baldwin Sch., Inc.*, 191 F.3d 8, 11 and n. 2 (1st Cir. 1999); *Pottgen v. Missouri State High Sch. Activities Ass'n*, 103 F.3d 720, 723 (8th Cir. 1997); *Homeward Bound, Inc. v. Hissom Mem'l Ctr.*, 963 F.2d 1352, 1354 n. 1 (10th Cir. 1992); *Jones v. Illinois Dep't of Rehabilitation Servs.*, 689 F.2d 724, 730 n. 8 (7th Cir. 1982).

In this Circuit, "[t]he lodestar approach governs the initial estimate of reasonable fees." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992), *cert. denied*, 506 U.S. 1053 (1993).  Under this

approach, "the number of hours reasonably expended on the litigation [are] multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Grant*, 973 F.2d at 99.

The Court must determine if the hours expended and the rates charged are reasonable, and the fee applicant has the burden to establish the reasonableness of both. *Hensley*, 461 U.S. at 433; *Alnutt v. Cleary*, 27 F.Supp.2d 395, 399 (W.D.N.Y. 1998). The initial fee calculation should exclude hours that were not "reasonably expended" because they were "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. A reasonable rate is one that is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984).

Although there is a strong presumption that the lodestar figure represents the reasonable fee, *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992), other considerations may lead to an upward or downward adjustment of the lodestar. *Hensley*, 461 U.S. at 434. The most critical factor to consider is the degree of success obtained by the plaintiff. *Id.* at 436.

## II. Application to this Case

### A. Reasonableness of Hours Expended

Defendants' first objection to plaintiff's fee request is that the hours expended by plaintiffs' attorneys were excessive, duplicative, and, in some instances, completely unnecessary. Plaintiffs respond that they have already reduced their fee request by 5% of the hours actually expended to account for any duplication of work, inefficiencies, etc.

In assessing whether an attorney's time was "reasonably expended," the Court must ask whether the attorney exercised "billing judgment." As the Supreme Court has explained,

> [c]ounsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in

private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."

*Hensley*, 461 U.S. at 434 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C.Cir. 1980) (en banc)). Under this principle, excessive, redundant, or unnecessary hours are to be excluded from a fee award, and a district court may apply a reasonable percentage reduction "as a practical means of trimming fat from [the] fee application." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quoting *New York Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)).

In the case at bar, after reviewing the time records of plaintiffs' counsel, I conclude that, even with the 5% reduction in the hours claimed, the time that counsel spent on this case was excessive. A further reduction is therefore warranted.

In their memorandum of law in opposition to plaintiffs' fee application, defendants point out a number of entries that suggest that plaintiffs' attorneys spent an inordinate amount of time on certain matters. Plaintiffs take issue with some of defendants' calculations, but even accepting plaintiffs' figures, the hours spent on this case are unreasonably high.

For example, it appears that plaintiffs' attorneys spent about 140 hours researching and writing a brief and supporting papers in October 2000. Plaintiffs do not dispute the accuracy of that figure, but contend that those hours were reasonably expended because of the number and complexity of the issues involved. They also note that this time was spent not just on a single motion, but in responding to defendants' motion for summary judgment, and in support of plaintiff's cross-motions for partial summary judgment and for a preliminary injunction.

I recognize that addressing the issues presented by those motions required researching the relevant statutes and regulations, as well as analyzing the data presented by defendants concerning the company's provision of paratransit service. On the other hand, there were very few reported

cases applying these provisions; in its July 2003 decision, the Second Circuit noted that it was "the first circuit court to consider and apply these regulations," and that only two district courts had applied the regulations up to that point. 337 F.3d 208 and n. 5. While this dearth of authority may have made it more important for counsel to research the legislative and regulatory history of the pertinent provisions, on balance it would seem to have required less overall research time than a case in which counsel is faced with a mountain of case law to sift through.

Similarly, plaintiffs' attorneys do not dispute defendants' assertion that they billed over eighty hours working on certain motion papers in early February 2001. Plaintiffs contend that defendants have minimized the the scope and magnitude of this work, but again, based on the Court's familiarity with this case and the issues presented, I believe that some of this time was excessive.

A significant factor that unnecessarily inflated the time charged by plaintiffs' counsel was the frequent attendance of multiple attorneys for court appearances and other matters, where two or even one attorney would have sufficed. On occasion, four attorneys were present and charged time. On several occasions, for instance, multiple attorneys charged time for attending conferences or oral arguments both in this Court and before the Court of Appeals. Although plaintiffs' counsel contends that this was reasonable because of the different roles assigned to each attorney, I do not believe that this is consistent with the "billing judgment" standard enunciated by the Supreme Court in *Hensley*.

While the use of multiple attorneys is not *per se* unreasonable, *see, e.g.*, *Planned Parenthood of Central New Jersey v. Attorney Gen'l of State of New Jersey*, 297 F.3d 253, 272 (3d Cir. 2002); *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 297 (1st Cir. 2001), in this case I believe that it was not always necessary or reasonable, and that it did lead to duplication of effort and excessive hours being billed. For example, plaintiffs seek fees for time spent by Sarah Gilmour,

Esq., in attending oral argument before the Court of Appeals, but she did not argue the motion, and attended essentially as an observer.  Although plaintiffs contend that it was "critical" for her to attend so that she could explain certain things to some of the named plaintiffs in attendance that day, Dkt. #68 ¶25, I do not view that role as "critical," nor is it apparent why the attorney who argued the appeal could not have handled that task as well.  It just appears to involve duplicative efforts for three attorneys to travel to the Second Circuit.

Similarly, four attorneys attended the oral argument in this Court of the parties' summary judgment motions on March 9, 2001, and three attorneys attended a settlement conference on November 9, 2001, and another conference on December 18, 2001.  It was, in fact, commonplace for plaintiffs to be represented at conferences and other court appearances by three or more attorneys. Although plaintiffs contend that this was reasonable because each attorney had a different role to play, I disagree.  Division of labor is supposed to make work *more* efficient, not less.  Here, it appears simply to have resulted in duplication of effort.

Plaintiffs' attorneys were certainly free to attend conferences, oral arguments, or other court appearances if they chose.  Defendants, though, should not be required to compensate all of plaintiffs' attorneys for those appearances when the use of just one or two lawyers would have been adequate.  *See In re Mullins*, 91 F.3d 1516, 1522 (D.C. Cir. 1996) (in seeking reimbursement for attorney's fees incurred in independent counsel's investigation into allegedly illegal search of presidential candidate's passport file, Assistant Secretary of State for Legislative Affairs was not entitled to reimbursement for multiple attorneys' attendance at meetings of joint defense group); *Sabatini v. Corning-Painted Post Area Sch. Dist.*, 190 F.Supp.2d 509, 521 (W.D.N.Y. 2001) ("While plaintiffs or their attorneys might have preferred to have both [attorneys] in court that day [for oral

argument], that does not mean that it was reasonably necessary that they both attend, and presumably either one of them could have argued the motion alone").

I also note that much of the work that plaintiffs' attorneys did perform in this case was performed by higher-paid partners and senior attorneys. Plaintiffs' counsel explains that in part this was due to certain funding arrangements for counsel's nonprofit law office, which precluded the office from using junior attorneys or associates on general litigation tasks. *See* Reply Decl. of Bryan D. Hetherington (Dkt. #68) ¶ 22. While that may be so, again I do not believe that it means that defendants should be forced to shoulder completely the resulting financial burden.

Aside from these particular instances of redundant or excessive hours, the total time for which fees are sought–about 2071.5 hours–seems unusually high considering the nature and history of this case.[3] That figure translates to about fifty-two forty-hour work weeks, which in my view is unreasonable considering that: there was no discovery in this case; there was very little case law to research; and the case never went to trial, but was resolved by a pre-answer dispositive motion. Indeed, plaintiffs' own attorney states in his reply declaration that plaintiffs' counsel originally "believed that extensive discovery would be needed" in this case, but that discovery became unnecessary "[w]hen defendants moved for Summary Judgment and offered statistical evidence clearly demonstrating legal violations ... ." Dkt. #68 ¶ 26. By their own admission, then, plaintiffs' counsel were able to defend against defendants' motion, and to support their own cross-motion for summary judgment, based largely on data provided to them by defendants themselves.

---

[3]Plaintiffs seek fees for 2149.4 hours of work, plus 31.1 of travel time, or 2180.5 hours altogether. Reduced by 5%, as plaintiffs' counsel has already done, yields a figure of 2071.475. That figure does not include an additional 38.9 hours spent on the attorney's fee motion, which is addressed separately in this Decision and Order.

By saying all this, the Court does not mean to minimize the importance of the issues involved in this case, or to ignore the relative novelty of some of the issues presented.   Given the straightforward way in which this case was litigated and resolved, however, I do not believe that litigating this case should have required the equivalent of a full year's worth of work by plaintiffs' attorneys.

**B. Sufficiency of Plaintiffs' Attorneys' Billing Records**

Defendants also contend that plaintiffs' counsel's time records are insufficiently detailed. Defendants assert that many of the entries are so vague and cryptic that it is impossible to tell whether the time claimed was reasonably spent.

The Second Circuit has stated that a party seeking an award of attorney's fees must support the request with contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done."   *New York State Ass'n for Retarded Children, Inc.*, 711 F.2d at 1148.   The purpose of this requirement is to provide the court with enough information to "audit the hours and determine whether they were reasonably expended."   *King v. JCS Enterprises, Inc.*, 325 F.Supp.2d 162, 166 (E.D.N.Y. 2004) (citing *New York State Ass'n for Retarded Children*, 711 F.2d at 1148).

After reviewing counsel's time records, I find that while they are generally adequate, there are a number of impermissibly vague entries.   These include meetings and conferences regarding "strategy," "research," and "status," as well as generalized references to work on "brief[s]" and "affidavit[s]," and to "prepar[ing]" for conferences, oral arguments, etc.   *See* Dkt. #63 Exs. C, E, G, I, and J.

From my personal knowledge of this case, I am able to some extent to deduce what some of these entries are referring to. A simple look at the docket sheet, for instance, tends to show which brief a particular entry is probably referring to. Without some further explanation of what issues were being researched, however, or what the nature of an attorney's "preparation" was, it is difficult to know whether this time was reasonably spent. While I am not suggesting that counsel must explain in minute detail what work was performed, the use of these generic descriptions, in my view, also calls for some reduction of the fee award beyond the 5% reduction applied by plaintiffs.[4] *See Sabatini*, 190 F.Supp.2d at 522 (finding entries such as "hearing preparation"; "prepare for hearing"; "review records"; "telephone conference with client"; "prepare for discovery"; etc., insufficient); *G.M. v. New Britain Bd. of Educ.*, No. 3:96CV2305, 2000 WL 435577 *5 (D.Conn. Mar. 8, 2000) (entries stating "preparation for hearing," "appeal analysis," "work on appeal brief," and "reply brief" did not give court an adequate basis on which to evaluate reasonableness of hours expended).

To reflect both the excessive hours claimed and the insufficiency of some of plaintiffs' attorneys' time records, the Court will reduce the hours claimed by 20% rather than by 5%, as plaintiffs have done. The total fee awarded is set forth in section (F) below.

## C. Billing Rates

Defendants next challenge the billing rates used by plaintiffs' counsel, which range from $200 to $300 an hour. Defendants contend that those rates are excessive, and that plaintiffs have improperly used current rather than historical rates. In addition, defendants assert that plaintiffs' attorneys have improperly charged their full hourly rates for travel time.

---

[4]I note that some of counsel's time entries do describe the work performed in more detail. *See, e.g.*, Dkt. #63 Ex. E at 3 (5 hours for "[r]esearch on elements for paratransit lawsuit; research on RGRTA as a 'public entity'; 'public entity corp.' & Section 1983").

In general, the lodestar should be based on "prevailing market rates" for comparable attorneys of comparable skill and standing in the pertinent legal community. *Blum*, 465 U.S. 886, 895 (1984). In addition, the fact that the prevailing party was represented by a non-profit law office does not mean that counsel's hourly rates should be lower than if they were at a for-profit firm, since "Congress did not intend the calculation of the awards to vary depending on whether the plaintiff was represented by private counsel or by a nonprofit legal services organization." *Id.* at 894. "That a nonprofit legal services organization may contractually have agreed not to charge any fee of a civil rights plaintiff does not preclude the award of a reasonable fee to a prevailing party in a § 1983 action, calculated in the usual way." *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989).

As with most other aspects of a motion for attorney's fees, the moving party has the burden of establishing the reasonableness of the rates requested. *Hensley*, 461 U.S. at 433. A fee applicant is generally required "to produce satisfactory evidence–in addition to the attorney's own affidavits–that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895-96 n. 11; *see*, *e.g.*, *A.R. ex rel. R.V. v. New York City of Educ.*, 407 F.3d 65, 82 (2d Cir. 2005) (noting that plaintiffs had submitted affidavits by special-education lawyers setting forth their hourly fees).

In the case at bar, plaintiffs have submitted affidavits of two local attorneys, Paul L. Leclair, Esq. and Harold A. Kurland, Esq., opining that the rates requested by plaintiffs' attorneys in this case are reasonable and consistent with the rates generally charged for comparable types of litigation by attorneys in this area with similar levels of education and experience. The Court knows both attorneys and respects their judgment, but the Court is not bound by those opinions, and "may 'rely in part on [its] own knowledge of private firm hourly rates in the community.'" *Association for*

*Retarded Citizens of Connecticut, Inc. v. Thorne*, 68 F.3d 547, 554 (2d Cir. 1995) (quoting *Miele v. New York State Teamsters Conf. Pension & Retirement Fund*, 831 F.2d 407, 409 (2d Cir. 1987)). In addition, "[t]he district court may also consider other rates that have been awarded in similar cases in the same district." *Amato v. City of Saratoga Springs*, 991 F.Supp. 62, 66 (N.D.N.Y. 1998).

Based on my knowledge of typical hourly rates in the Rochester area, and also on rates that have been awarded in recent cases in this district, I find the requested rates to be too high.  In particular, the Court has found no reported case from this district in which any attorney has been awarded fees at an hourly rate of $300 or higher.  *See, e.g.*, *Critchlow v. First UNUM Life Ins. Co. of America*, 377 F.Supp.2d 337, 342 (W.D.N.Y. 2005) (reducing hourly rates from requested rates of $275 and $250 to $250 and $200); *Associates Ins. Co. v. George J. Castle, Inc.,* No. 04CV174, 2005 WL 1868881, at *1 (W.D.N.Y. Aug. 2, 2005) ($150 an hour for an attorney with over twenty years' experience); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) ($260 for a partner, $215 for a higher-level associate, and $190 for a lower-level associate); *Elliott v. Board of Educ. of Rochester City Sch. Dist.*, 295 F.Supp.2d 282, 284 (W.D.N.Y. 2003) ($205 an hour in Rehabilitation Act claim for experienced litigator with expertise in education law); *Sabatini*, 190 F.Supp.2d 509, 515 (W.D.N.Y. 2001) (awarding fees at rates ranging from $120 for an associate to $235 for a partner, and noting that although arguably slightly high in comparison with these cases, they are nonetheless reasonable in light of the specialized nature of his services and his expertise in the area of special education law); *Wylucki v. Barberio*, No. 99-CV-1036, 2001 WL 34013676, at *6-7 (W.D.N.Y. Aug. 24, 2001) ($250 per hour reasonable for attorney who had been in private practice for thirty-four years and had established a reputation in this district "as a skilled and experienced attorney in the field of civil rights"); *see also Gatti v. Community Action Agency of Greene County, Inc.*, 263 F.Supp.2d 496, 515 (N.D.N.Y. 2003) (stating that the current prevailing

hourly rates generally applied in the Northern District of New York are $175 for civil rights attorneys with significant experience and numerous years of practice, $125 for associates with four or more years of experience, and $100 for newly admitted attorneys), *aff'd*, 86 Fed. Appx. 478 (2d Cir. 2004).[5]

This is not to say that a court cannot award fees at a higher hourly rate than those awarded in prior cases; certainly rates tend to increase over time, and at some point $300 an hour may well be considered a reasonable rate in this district. I do not believe that it is reasonable here, however, and I believe that plaintiffs' other requested rates are also unreasonably high. In that regard, I note that this Court recently awarded attorney's fees in *Catanzano v. Doar*, 378 F.Supp.2d 309 (W.D.N.Y. 2005), in which the plaintiffs were represented by the same public-interest law office as the plaintiffs in the case at bar. The requested rates in *Catazano* (which were not objected to, and which the Court accepted), included rates of $250 for Bryan Hetherington, Esq. and $160 for Sarah Gilmour, Esq. In this case, Hetherington and Gilmour request rates of $275 and $200 respectively. Although they are not bound by the rates that they requested, or were awarded, in other cases, this is nevertheless one indication that the requested rates here are too high. For all these reasons, then, the Court will reduce the hourly rates, as set forth below.

I also note that defendants object to plaintiffs' attorneys' use of current rather than historical rates. Although there is some support for the use of historic rates in this circuit, *see New York State Ass'n for Retarded Children*, 711 F.2d at 1152-53, the Supreme Court held in *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989), that it is within the discretion of the district court to make "an appropriate adjustment for delay in payment-whether by the application of current rather than historic hourly

---

[5]While *Gatti* is from the Northern District, I believe that the Northern and Western districts are roughly comparable in terms of what would be considered a reasonable hourly rate.

rates or otherwise." "In protracted litigation, therefore, a district court has the latitude to depart from the two-phase approach and may calculate all hours at whatever rate is necessary to compensate counsel for delay." *Grant v. Martinez*, 973 F.2d 96, 100 (2d Cir. 1992). *See also Savoie v. Merchants Bank*, 166 F.3d 456, 464 (2d Cir. 1999) (district court properly based fee award on current hourly rates, rather than rates in effect at time of distribution, to compensate attorneys for delay in payment); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("current rates, rather than historical rates, should be applied in order to compensate for the delay in payment"); *Elliott*, 295 F.Supp.2d at 285 (using current rates to compensate plaintiff's attorney for delay in payment). The Court will therefore use plaintiffs' attorneys' current rates in calculating the fee award.

I do agree, however, that attorney David Cook, Esq. is not entitled to his full hourly rate for travel time. Although plaintiffs contend that Cook "properly billed the full rate for the 12 hours he spent on August 5, 2002 traveling to the Second Circuit because he prepared for the hearing while in transit," Dkt. #67 at 8, it is difficult to believe that he could have spent the entire twelve hours working on this case. Cook will therefore be awarded fees for travel time at half his normal hourly rate. *See Critchlow*, 377 F.Supp.2d 337, 343 n. 1 (W.D.N.Y. 2005) ("in this circuit, travel time is generally compensated at half the usual hourly rate").[6]

---

[6]It also appears that Cook's travel time was billed twice. His time records contain one entry dated August 5, 2002, for 12 hours to "[p]repare for an [sic] travel to NYC for 8/6 2nd Circuit oral argument," and another 12-hour entry dated August 6, 2002, stating, "Prepare for and attend 2nd Circuit oral argument. Return to Rochester from NYC." Dkt. #63 Ex. I at 8-9. Twelve hours will therefore be deducted from Cook's total hours.

**D. Enhancement of the Lodestar**

Although plaintiffs' counsel have reduced their claimed hours by 5%, they have effectively negated that reduction by applying a 10% enhancement to the dollar amount of their requested fee award, based on what they describe as the "exceptional results" that they achieved in this litigation. Defendants contend that no such enhancement is warranted.

The Supreme Court has stated that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley*, 461 U.S. at 435. *Hensley* also recognized, though, that the full lodestar may constitute an "excessive" fee award where the "plaintiff has achieved only partial or limited success." *Id.* at 436. The Court specifically noted that "[t]his will be true even where the plaintiff's claims [are] interrelated, nonfrivolous, and raised in good faith," because "Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill." *Id.*

In addition, "[s]ince this general declaration [in *Hensley*], ... the Court has gradually narrowed the circumstances under which an enhancement might be appropriate. An enhancement is no longer justified on the basis of factors such as the novelty of the issues, the complexity of the litigation, the high quality of the representation, or the number of people benefited." *Dague v. City of Burlington*, 935 F.2d 1343, 1359 (1991) (citing *Blum*, 465 U.S. at 898-900, and *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)), *rev'd in part*, 505 U.S. 557 (1992). "All these factors are considered subsumed in the calculation of the lodestar, because they are deemed to be adequately reflected in the hourly rate and the number of hours expended on the litigation." *Id.* (citing *Blum*, 465 U.S. at 898-900, and *Delaware Valley*, 478 U.S. at 565). On

appeal from the Second Circuit's decision in *Dague*, the Supreme Court narrowed the available grounds for an enhancement still further, holding that "enhancement for contingency is not permitted" under federal fee-shifting statutes.  505 U.S. at 567.  *See also TVT Records v. Island Def Jam Music Group*, 288 F.Supp.2d 506, 510 (S.D.N.Y. 2003) ("the Supreme Court has established a strong presumption that the lodestar represents the reasonable fee under the federal fee-shifting statutes and thus has substantially narrowed, if not effectively abolished altogether, the circumstances which justify enhancements"); *Loper v. New York City Police Dep't*, 853 F.Supp. 716, 721 (S.D.N.Y. 1994) (concluding that "fee enhancements under the fee-shifting statutes are no longer permissible in this Circuit") (citing *Dague*, 505 U.S. at 562).

In the case at bar, I conclude that, although plaintiffs certainly prevailed, the results obtained were not so exceptional as to warrant an enhancement of the lodestar.  For one thing, plaintiffs did not prevail on every issue.  On appeal from this Court's decision granting summary judgment for the plaintiffs, the Court of Appeals rejected plaintiffs' argument (and this Court's holding) that "the regulations ... require unfailing [next-day] service."  Instead, the court held, "the relevant statutory and regulatory provisions ... require[] the formulation and implementation of a plan to meet 100% of the demand for next-day ride requests by eligible riders," but also "grant[] limited leeway for occasional failures of such well-laid plans to meet demand."  337 F.3d at 208.

In addition, on remand, plaintiffs withdrew their second and fourth claims for relief, which alleged, respectively, that defendants had maintained waiting lists for paratransit service, in violation of 49 C.F.R. § 37.131(f)(2), and that defendants had failed to provide paratransit service in accordance with their paratransit plan submitted to the Secretary of Transportation, in violation of 42 U.S.C. § 12143(e)(4).  Plaintiffs contend that they withdrew those claims because they had obtained all the relief that they sought, but the fact remains that they did not prevail on those two

claims. *See Green v. Torres*, 361 F.3d 96, 99 (2d Cir. 2004) (rejecting argument that "courts should be barred from measuring a party's degree of success based on claims that are voluntarily withdrawn").

This is not to denigrate the results that plaintiffs did obtain. The case law makes clear, however, that enhancements (if they are permissible at all, which appears to be in some doubt) are the exception, not the rule, and the results here were simply not so extraordinary as to justify an enhancement of plaintiffs' fee award.

**E. Fees for Time Spent on Fee Motion**

Defendants do not contend that the time that plaintiffs' attorneys spent on the fee motion itself was unreasonable, but they contend that the requested fee for that time is excessive because the work was performed by the three attorneys with the highest hourly rates. I note, however, that the bulk of the time spent by plaintiffs' counsel in replying to defendants' response to the fee motion (24.6 hours out of 38.9 hours) was performed by Beth Trittipo, who has the lowest requested hourly rate, $175 an hour. Prevailing parties are generally entitled to attorney's fees for work spent in preparing and defending a motion for attorney's fees, *see Weyant v. Ost*, 198 F.3d 311, 316 (2d Cir. 1999), and I do not believe that the hours here are excessive. The hourly rates will be reduced, as explained above, but no further reduction of this portion of the fee request is warranted.

**F. Calculation of the Fee Award**

In accordance with the Court's rulings in this Decision and Order, plaintiffs are awarded attorney's fees as set forth below. Plaintiffs' attorneys' hours for time spent through the filing of the motion for attorney's fees have been reduced by 20% of the total hours billed, without including

plaintiffs' attorneys' 5% reduction for billing judgment. This 20% reduction, in other words, amounts to an additional reduction of 15 percentage points over and above the 5% billing judgment reduction. The rates have been reduced as well, as discussed in section (C).

Plaintiffs are awarded fees as follows:

### Fees for Time Spent through Filing of the Motion for Attorney's Fees

| Attorney | Rate | Hours | Subtotal | Travel Time | Travel Total | Total |
|---|---|---|---|---|---|---|
| Hetherington | $250 | 259.9 | $64,980 | 8.5 | $1062.50 | $66,042.50 |
| Cook | $250 | 237.3 | $59,320 | 12.0 | $1500 | $60,820 |
| Dellinger | $225 | 682.6 | $153,594 | 14.1 | $1586.25 | $155,180.25 |
| Eckman | $210 | 98.8 | $20,748 | 0 | 0 | $20,748 |
| Gilmour | $175 | 262.8 | $45,983 | 0 | 0 | $45,983 |
| **Paralegals** | | | | | | |
| Greene | $75 | 187.2 | $14,040 | 0 | 0 | $14,040 |
| Reed | $75 | 11.4 | $855 | 0 | 0 | $855 |

**Total Fees for Time Spent through Filing of the Motion for Attorney's Fees**   $363,668.75

### Fees for Time Spent After Filing of the Motion for Attorney's Fees

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Hetherington | $250 | 14.3 | $3575 |
| Trittipo | $150 | 24.6 | $3690 |

**Fees for Time Spent After Filing of the Motion for Attorney's Fees**   $7265

**Total Attorney's Fees**   $370,933.75

**Costs and Disbursements**   $2019.53

**Total Fees and Costs**   $372,953.28

**CONCLUSION**

Plaintiffs' motion for attorney's fees (Dkt. #61) is granted in part and denied in part. Plaintiffs are awarded attorney's fees and costs in the amount of $372,953.28. That amount shall be paid by defendant within thirty (30) days of the date of entry of this Decision and Order.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        September 20, 2005.